1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JOSE LUIS BELMONTES,                    ) Case No.: 1:10-cv-02378 JLT
                                            )
12              Plaintiff,                  ) ORDER DIRECTING REMAND PURSUANT
                                            ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13      v.                                  ) AND DIRECTING ENTRY OF JUDGMENT
                                            ) IN FAVOR OF PLAINTIFF JOSE LUIS
14  MICHAEL J. ASTRUE,                      ) BELMONTES AND AGAINST DEFENDANT
    Commissioner of Social Security,        ) MICHAEL J. ASTRUE, COMMISSIONER OF
15                                          ) SOCIAL SECURITY
                Defendant.                  )
16  _____)

17      Jose Luis Belmontes ("Plaintiff") asserts he is entitled to disability insurance benefits and

18  supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

19  administrative law judge ("ALJ") failed to give legally sufficient reasons for rejecting Plaintiff's

20  credibility.  In addition, Plaintiff asserts the ALJ erred in relying upon the testimony of the vocational

21  expert.  Therefore, Plaintiff seeks judicial review of the administrative decision denying his claim for

22  benefits.  For the reasons set forth below, the matter is **REMANDED** for further proceedings

23  pursuant to sentence four of 42 U.S.C. § 405(g).

24                          **PROCEDURAL HISTORY**[1]

25      Plaintiff filed applications for disability insurance benefits and supplemental security income,

26  alleging disability beginning October 2, 2007.  AR at 17, 112.  Plaintiffs' applications were denied

27

28      [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                    1

1    initially and upon reconsideration. *Id.* at 63-73.  Plaintiff requested a hearing, which was held before

2    an ALJ on February 16, 2010. *Id.* at 30.  The ALJ determined Plaintiff was not disabled under the

3    Social Security Act from October 2, 2007 through the date of the decision, and issued an order

4    denying benefits on March 29, 2010. *Id.* at 17-26.  Plaintiff requested a review by the Appeals

5    Council of Social Security, which denied review of the ALJ's decision on October 29, 2010. *Id.* at

6    1-5.  Therefore, the ALJ's determination became the decision of the Commissioner of Social

7    Security ("Commissioner").

8                                          **STANDARD OF REVIEW**

9            District courts have a limited scope of judicial review for disability claims after a decision by

10   the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

11   such as whether a claimant was disabled, the Court must determine whether the Commissioner's

12   decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

13   ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

14   standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y*

15   *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

16           Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

17   reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

18   389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

19   must be considered, as "[t]he court must consider both evidence that supports and evidence that

20   detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

21                                          **DISABILITY BENEFITS**

22           To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

23   engage in substantial gainful activity due to a medically determinable physical or mental impairment

24   that has lasted or can be expected to last for a continuous period of not less than 12 months.  42

25   U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

26           his physical or mental impairment or impairments are of such severity that he is not only
             unable to do his previous work, but cannot, considering his age, education, and work
27           experience, engage in any other kind of substantial gainful work which exists in the
             national economy, regardless of whether such work exists in the immediate area in which

28

1   he lives, or whether a specific job vacancy exists for him, or whether he would be hired
2   if he applied for work.

3   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*
4   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of
5   disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other
6   substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

7                                           **ADMINISTRATIVE DETERMINATION**

8          To achieve uniform decisions, the Commissioner established a sequential five-step process
9   for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2010).
10  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful
11  activity during the period of alleged disability, (2) had medically determinable severe impairments
12  (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,
13  Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant
14  work or (5) the ability to perform other work existing in significant numbers at the state and national
15  level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and
16  opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 416.927, 416.929.

17  **A.      Relevant Medical Evidence**

18          1.  Treatment Notes

19          In September 2007, Plaintiff reported a history of back pain due to his employment position,
20  and that the pain had increased over the past two to three months.  AR at 196.  Plaintiff demonstrated
21  "mild lumbar tenderness."  *Id.*  Plaintiff was diagnosed with low back pain, a history of arthritis in
22  his hands, and right lower abdominal pain.  *Id.*  According to Dr. Eugene Roos, an MRI of Plaintiff's
23  lumbar spine "show[ed] the vertebral bodies and discs to be normal in size and shape and in good
24  alignment."  *Id.* at 203. Also, Dr. Roos found images of Plaintiff's hands showed the joint surfaces
25  were "well maintained" without fractures, dislocation, destructive lesions, or abnormal calcification.
26  *Id.* at 205-06.

27          Plaintiff had an MRI performed on his lumbar spine on October 16, 2007, which Dr. Roafi
28  determined showed degenerative changes at L4/5 and L5/S1.  AR at 185.  In addition, Dr. Roafi

                                                             3

1   found Plaintiff had an extruded disc at L5/S1.  *Id.*  Dr. Roafi concluded Plaintiff had "degenerative

2   osteoarthritis in the facets" and there was a "possibility of conjoint L4/L5 nerves."  *Id.*  In November

3   2007, Plaintiff was referred to physical therapy because his pain was "not well controlled with med

4   treatment."  AR at 191.

5          On January 12, 2008, Plaintiff continued to complain of back pain, and he was scheduled to

6   see a neurosurgeon/ back specialist.  AR at 189.  Plaintiff reported his back pain was "worse with

7   movement," but the pain was "partially alleviated with Motrin."  *Id.*  Dr. Marlowe Marinas approved

8   "extending disability" for another month.  *Id.*

9          On August 12, 2008, Plaintiff had an electrodiagnostic study performed on his legs.  AR at

10  212-15.  Dr. Hamid Salehi concluded Plaintiff's sensory and motor studies were "essentially

11  normal."  *Id.* at 215.  However, Dr. Salehi found "evidence for chronic lumbar radiculopathy in right

12  L3, L4, L5 and S1 roots."  *Id.*

13         Beginning in October 2008, Plaintiff was treated at Kern Medical Center.  On October 13,

14  2008, Plaintiff complained of back pain at a level 9 out of 10.  AR at 318.  Plaintiff reporting

15  bending and walking aggravated his pain though resting and taking a pain pill alleviated the pain.  *Id.*

16  He said he did not have any problems with his activities of daily living, or problems with

17  ambulation.  *Id.*  An MRI taken on October 14, 2008 revealed "minimal scoliosis of the lumbar

18  spine" and "minimal degenerative joint disease."  AR at 343.

19         Plaintiff had MRIs on his lumbar spine and left hip taken in April 2009.  Dr. Mohammed

20  Izhar found no indications of fractures or lesions on Plaintiff's lumbar spine.  AR at 338.  Dr. Izhar's

21  determined Plaintiff had "mild to moderate" disk protrusion at the L4-5 level and "mild" disk

22  protrusion at the L5-S1 level.  *Id.*  In addition, Dr. Izhar opined Plaintiff had "[m]ild changes of facet

23  arthrosis at L4-5 and L5-S1 levels."  *Id.* at 340.  Dr. James Ching found Plaintiff had "[d]egenerative

24  joint disease of the left hip," but the joints were "unremarkable."  *Id.* at 344.

25         In September 2009, Plaintiff complained of pain radiating to his feet and toes, and weakness

26  in his left leg.  AR at 333.  Plaintiff reported he was unable to walk more than ten minutes, and that

27  he "does not expect to go back to work because of arthritis [in] hands and hips.  *Id.* at 333-34.  In

28  December 2009, Plaintiff continued to complain of pain, and received emergency care after he bent

1   over and felt an increase in the pain.  *Id.* at 447, 451-52.  Plaintiff was diagnosed with a lumbar

2   sprain, and proscribed Vicodin and Valium.  *Id.* at 449.

3          In April 2010, Plaintiff reported feeling pain at a level 8 of 10, which he described as "sharp."

4   AR at 384.  Plaintiff was referred to physical therapy for treatment.  *Id.* at 408, 411.  The physical

5   therapist found Plaintiff's "[l]umbar active range of motion [was] limited by 50% in all directions."

6   *Id.* at 638.

7          2.   Medical Opinions[2]

8          Dr. Anne Khong completed an assessment of Plaintiff's physical residual functional capacity

9   on June 4, 2008.  AR at 233-40.  Dr. Khong opined Plaintiff had the ability to lift and/or carry twenty

10  pounds occasionally and ten pounds frequently, without limitations with pushing and pulling.  AR at

11  234.  In addition, Plaintiff could sit, stand/and or walk about six hours in an eight-hour day.  *Id.*

12  Plaintiff could frequently balance, but was limited to occasionally climbing, stooping, kneeling

13  crouching, and crawling.  *Id.* at 235.  Therefore, after considering Plaintiff's "alleged pain w[ith]

14  some changes seen on the MRI," Dr. Khong concluded Plaintiff was "capable of at least light work

15  w[ith] postural limits."  *Id.* at 239.

16         Dr. Lavanya Bobba "reviewed all the evidence in [the] file and affirmed Dr. Khong's

17  assessment "as written" on August 13, 2008.  AR at 285-86.

18  **B.     Hearing Testimony**

19         1.   Plaintiff's Testimony

20         Plaintiff testified with the assistance of an interpreter before an ALJ on February 16, 2010.

21  AR at 32.  Plaintiff said he was forty-two years old, and attended school in Mexico up to the seventh

22  grade.  *Id.* at 44.  Plaintiff reported he had performed work as a foreman and agricultural field

23  worker, which required him to transplant and cut vegetables.  *Id.* at 45.  Also, he worked as a truck

24  driver foreman who delivered different plants to ranches.  *Id.*  Plaintiff said a forklift fell on his leg,

25

26         [2] Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources
    that reflect judgments about the nature and severity of [a claimant's] impairments, including . . . symptoms, diagnosis and
27  prognosis, and what [a claimant] can do despite impairment(s) and . . . physical or mental restriction."  20 C.R.R. §§
    404.1527(a)(2), 416.927(a)(2).

28

1   and as a result he "was disabled for a period of time," during which he sold merchandise at a swap

2   meet. *Id.* at 45-46.

3         Plaintiff said he had problems with his hands because his fingers cramped and there were

4   occasions that he had "no strength at all." AR at 38. He reported his "right hand is worse than the

5   left," and he is right-handed. *Id*. Plaintiff explained he had problems with is right leg because "it

6   goes numb" and could feel "like pins and needles running down [his] right leg and . . . right hip. *Id.*

7   at 39, 43. In addition, Plaintiff said he had problems with his back, but explained he did not have

8   spinal surgery because it was not recommended by his physician: "The doctor told me that if he were

9   to do surgery on me I would still be in pain and I still would not be able to work. He recommended

10  that I stay like this because I do have another problem. I have arthritis in all my body." *Id.* at 35.

11        According to Plaintiff, he had a single physical therapy appointment, but was unable to

12  continue because he had a "problem of not having insurance coverage." AR at 35. Plaintiff reported

13  that the "only thing" his doctors suggested is for him "to use medication for the pain." *Id*. at 38. He

14  said the medication helped, but "the pain [was] constant" when he did not take Vicodin. *Id*. at 39.

15        Plaintiff said he took his daughters to school and picked them up in the afternoon, and

16  occasionally went to the market. AR at 47. Plaintiff reported he would "cut [the] yard maybe once a

17  month." *Id.* Because Plaintiff's wife had a daycare business in her home, if she took the children out

18  to the patio, he would watch them outside. *Id.* Plaintiff stated he helped feed the children

19  occasionally, but never picked them up. *Id.* at 48.

20        Plaintiff estimated he could stand or walk "about 10 to 15 minutes" before he needed to rest.

21  AR at 39. He believed he could sit "about 15 to 20 minutes," but he had "to be moving forward and

22  backward" to position himself in the chair. *Id.* Plaintiff said, "There's occasions that I cannot pick

23  up even a gallon of milk because I have the trembling in my right hand. And there's other times that

24  I don't have the pain as bad and I can pick up a 24 water case." *Id.* at 40.

25        2.  Medical Expert Testimony

26        Dr. Wylupe, an orthopedist, testified as a medical expert at the hearing. AR at 40. Dr.

27  Wylupe characterized Plaintiff's chronic degenerative changes of the lumbar spine as the "most

28  significant" medical issue, and his second most-significant issue as obesity. *Id.* Next, Dr. Wylupe

6

1   opined Plaintiff had a "pain disorder as a result of the combination of those issues." *Id.* at 41.  Dr.

2   Wylupe observed Plaintiff had "pain issues," which resulted in a limited range of motion that was

3   not well defined in the records.  *Id.*  According to Dr. Wylupe, Plaintiff's impairments did not meet a

4   listing individually or in a combination.  *Id.*

5         Dr. Wylupe observed "some significant degenerative changes" in Plaintiff's x-rays, but

6   believed "[t]here's no really good evidence that the surgical procedure would be helpful."  AR at 41.

7   He testified Plaintiff "may have significant radiculitis on the basis of an EMG study."  *Id.*

8         Dr. Wylupe opined Plaintiff was capable of sustaining work "at a light level, at least eight

9   hours a day with some restrictions."  AR at 41.  He concluded Plaintiff could not perform "extremes

10  of repetitive bending and lifting," although "frequent" bending and lifting was not precluded.  *Id.*

11  Plaintiff was not precluded from sitting, standing, or walking "at the usual levels."  *Id.*  Also, Dr.

12  Wylupe opined Plaintiff could move, transfer, and handle 10 pounds frequently and 20 pounds

13  occasionally.  *Id.*  However, Dr. Wylupe believed Plaintiff should not be exposed to heights and

14  ladders due to his obesity and medications, because the side effects were not well-defined.  *Id.* at 42.

15         3.   Vocational Expert Testimony

16        Vocational expert Gene Johnson ("VE") testified following the medical expert and Plaintiff.

17  AR at 49-58.  The VE classified Plaintiff's past relevant work as a farm worker, DOT[3] 402.663-010,

18  which was classified as medium work with an SVP of 4.  *Id.* at 51.  The VE opined farm worker II,

19  DOT 402.687-010, defined as medium work with an SVP of 2, incorporated the "foremen aspects"

20  of Plaintiff's work experience.  *Id.*  The VE characterized Plaintiff's work at swap meets as that of a

21  material handler, DOT 929.687-030, which was "especially heavy with an SVP of a 2."  *Id.*  Also,

22  the VE noted the work at swap meets "involves . . . sales work," which was comparable to that of a

23  sales clerk, DOT 279.357-054, which was light work.  *Id.*

24        The ALJ asked the VE to consider a hypothetical individual, and assume "the same age,

25  education, and background experience" of Plaintiff.  AR at 51.  In addition, the VE assumed the

26

27        [3] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training
    Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy.  *Terry v.
    Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements, and may

28  be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1  individual was "capable of only a light level of exertion" and needed "a sit/stand option to be able to

2  adjust for position more or less at will during the day." *Id.* Postural limitations for the hypothetical

3  worker included no climbing of ladders or scaffolds. *Id.* at 51-52. Further, the worker could perform

4  overhead activities, gross and fine handling frequently, but not to the extent the actions were

5  "continuous and repetitive." *Id.* at 52.

6       Based upon the abilities and limitations set forth by the ALJ, the VE opined such a worker

7  would not be able to perform Plaintiff's past relevant work. AR at 52. However, the VE believed

8  the individual could perform work with "small products," DOT 739.687-036, which included "some

9  52,000-plus jobs" in California and "some 296,000-plus jobs" in the national economy. *Id.* at 53. In

10  addition, the VE opined the individual could perform work as a blending tank tender helper, DOT

11  520.687-066, which the VE said included over 45,000 jobs in California and 539,000 jobs in the

12  national economy. *Id.* at 54.

13       Next, the ALJ asked the VE to consider an individual with the same limitations, with the

14  addition of a "mild concentration pace and persistence limitation." AR at 54. The ALJ explained

15  that, assuming an average worker had a 100 percent concentration and pace during the day, the

16  "mild" limitation meant the individual functioned "about 90 percent of that, or a ten percent

17  limitation." *Id.* at 55. The VE opined such a limitation would not affect the jobs identified, because

18  the jobs were "able to accommodate a mild diminution." *Id.* However, if the limitation was

19  increased to 80 percent of the average worker, the VE believed it "really affect . . . the person's

20  ability to perform those jobs." *Id.*

21  **C.    The ALJ's Findings**

22       Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

23  gainful activity from the alleged onset date of October 2, 2007. AR at 19. Second, the ALJ found

24  Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and

25  obesity. *Id.* The ALJ found no impairment or combination of impairments meet or medically equal

26  one of the listed impairments. *Id.* at 20.

27       The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform light

28  work as defined in 20 CFR 404.1567(b) and 416.967(b) including lifting up to 20 pounds

1  occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday,

2  and sitting up to 6 hours in an 8-hour workday." AR at 21.  In addition, the ALJ set forth the

3  following limitations:

4      [H]e must be afforded the opportunity to sit and stand at will; he can only occasionally
       perform postural activities, but he must never climb ladders, ropes or scaffolds; he can

5      only frequently perform activities requiring gross and fine bilateral handling, but he must
       not perform any activities requiring power grasping or torquing; he can only frequently

6      perform work requiring over-the-shoulder activity, and; he would have mild limitations
       in his ability to maintain pace and persistence.

7

8  *Id.*  With this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but there

9  were "jobs that exist in significant numbers in the national economy that [he] can perform." *Id.* at

10  24-25.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security

11  Act. *Id.* at 26.

12                          **DISCUSSION AND ANALYSIS**

13  **A.      The ALJ set forth sufficient reasons to discount Plaintiff's credibility.**

14          In determining credibility, an ALJ must determine first whether objective medical evidence

15  shows an underlying impairment "which could reasonably be expected to produce the pain or other

16  symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell*

17  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  An adverse finding of credibility must be based on

18  clear and convincing reasons where there is no affirmative evidence of a claimant's malingering and

19  "the record includes objective medical evidence establishing that the claimant suffers from an

20  impairment that could reasonably produce the symptoms of which he complains." *Carmickle v.*

21  *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

22          The ALJ may not discredit a claimant's testimony as to the severity of symptoms only

23  because it is unsupported by objective medical evidence.  *See Bunnell*, 947 F.2d at 347-48.  In

24  addition, the ALJ "must identify what testimony is not credible and what evidence undermines the

25  claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d

26  915, 918 (9th Cir. 1993).  Credibility findings "must be sufficiently specific to allow a reviewing

27  court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

28  arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

1  2004).  Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be

2  expected to cause the alleged symptoms." AR at 22.  The ALJ considered Plaintiff's testimony

3  "concerning the intensity, persistence, and limiting effects of these symptoms," and found it was not

4  credible based upon the conservative treatment Plaintiff received, and the objective medical findings.

5  *Id.* at 22-23.

6              *Treatment received*

7         In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type,

8  dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).  Further, the

9  treatment Plaintiff received, especially when conservative, is a legitimate consideration in a

10  credibility finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  The Ninth Circuit has

11  "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony

12  regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

13         The ALJ observed, "[T]he claimant has not generally received the type of medical treatment

14  one would expect for a totally disabled individual.  While the claimant has consistently sought out

15  treatment and consistently complained of symptoms, that treatment has been essentially routine

16  and/or conservative in nature." AR at 23.  Further, the ALJ noted, "the claimant has been prescribed

17  with or recommended to use only over-the-counter pain medication," and "has only sporadically

18  been prescribed with or taken low dosages of narcotic-based pain medications." *Id.*  When an

19  impairment "can be controlled effectively with medication," the impairment cannot be considered

20  disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

21  Consequently, the treatments given to Plaintiff were considerations by the ALJ.

22              *Objective medical evidence*

23         As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and

24  the objective medical evidence in the record" can constitute "specific and substantial reasons that

25  undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

26  1999).  The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole

27  ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

28  relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

1   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of

2   medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the

3   ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ

4   "must consider the entire case record, including the objective medical evidence" in determining

5   credibility, but statements "may not be disregarded solely because they are not substantiated by

6   objective medical evidence"). Here, the ALJ did not base the credibility determination solely on the

7   fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the

8   objective medical evidence was a relevant factor in determining Plaintiff's credibility.

9           In citing the medical evidence as part of a credibility determination, it is not sufficient for the

10  ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v.*

11  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to

12  support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is

13  not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see*

14  *also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds

15  not to be credible and must explain what evidence undermines the testimony"). Here, the ALJ

16  considered the medical findings regarding Plaintiff's back pain, and noted Plaintiff was able to walk

17  without a limp. AR at 22. In addition, Plaintiff's x-rays and MRIs demonstrated mild changes in his

18  lumbar spine. *Id.* at 22-23. After summarizing the medical evidence, the ALJ concluded "the

19  objective medical findings fail to support the alleged severity of symptoms and the degree of

20  limitation." *Id.* at 23.

21          Given these considerations, the ALJ made "a credibility determination with findings

22  sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the]

23  claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ properly

24  considered Plaintiff's lack of treatment and the objective medical evidence as part of the credibility

25  determination, and substantial evidence in the record supports the ALJ's credibility determination.

26  ///

27  ///

28

1   **B.    The VE' testimony is not substantial evidence supporting the conclusion that Plaintiff**

2   **can perform work in the national economy.**

3          The Commissioner can establish there is work in "significant numbers" in the national

4   economy a claimant can perform through the testimony of a vocational expert or the Medical-

5   Vocational Guidelines. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  An ALJ may

6   call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be

7   able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d

8   1094, 1101 (9th Cir. 1999).  Here, because Plaintiff did not have the capacity to perform the full

9   range of light work under the Medical-Vocational Guidelines, the ALJ sought testimony from the VE

10  "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational

11  base." AR at 25.

12         As discussed above, the vocational expert testified Plaintiff had the ability to perform work

13  as a small products assembler and blending tank tender helper.  AR at 25.  Plaintiff contends the ALJ

14  should not have relied upon the vocational expert's testimony, because the vocational expert

15  "deviates from the DOT without explanation." (Doc. 12 at 8).  Plaintiff notes the DOT job codes

16  identified do not exist for the positions of small products assembler and blending tank tender helper.

17  *Id.* at 8-9.  Plaintiff argues the occupation of small products assembler, as described by the DOT,

18  "requires constant reaching, handling, and fingering," which Plaintiff cannot perform.  *Id.* at 8.

19  Further, Plaintiff seeks to present evidence regarding the number of jobs available for blending tank

20  tender helpers in the regional and national economy that contradicts the numbers identified by the

21  VE.  *Id.* at 10-11.

22         Apparently recognizing the VE's error, the ALJ corrected the job codes in his decision, and

23  cited the positions of small products assembler, DOT 739.687-030, and blending tank tender helper,

24  DOT 520-.687-022, in his decision that Plaintiff had the ability to perform work in the national

25  economy.  AR at 25.  As Defendant argues, the VE's error in identifying the correct job codes does

26  not invalidate the testimony.  (*See* Doc. 18 at 6).  The error is harmless, because the proper job codes

27  could be easily ascertained—and were located by the ALJ and Plaintiff.  Further, the job codes do

28  not affect the VE's testimony regarding whether Plaintiff had the ability to perform work as a small

1    products assembler or blending tank tender helper.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

2    1050, 1055 (finding an error harmless where the error is "inconsequential to the ultimate

3    nondisability determination").

4            Significantly, however, the job description of small products assembler appears to conflict

5    with the limitations set forth by the ALJ.  As noted by Plaintiff, the occupation "requires *constant*

6    reaching, handling, and fingering." (Doc. 12 at 8) (emphasis added).  When the ALJ set forth his

7    hypothetical to the VE, he stated the worker could perform gross and fine handling frequently, but

8    not to the extent the actions were "continuous and repetitive."  AR at 52.  Plaintiff contends the

9    Commissioner failed to "address how a person limited to frequent gross and fine manipulation could

10   perform an occupation that is described in the DOT and its companion publications as requiring

11   constant use of the hands for reaching, handling, and fingering." (Doc. 19 at 3).

12           The word "frequent" is defined as "occurring from one-third to two-thirds of the time."  1983

13   SSR LEXIS 30, at *14.[4]  Because the ALJ determined Plaintiff can "only frequently perform

14   activities requiring gross and fine bilateral handling" (AR at 21), the ALJ indicated Plaintiff can only

15   perform such handling up to two-thirds of the time.  However, the job description for small parts

16   assembler requires handling, "constantly," which is defined under as occurring "two-thirds or more

17   of the time." *Belcher v. Astrue*, 2010 U.S. Dist. LEXIS 65509, at *24-25 (E.D. Cal. June 9, 2010)

18   (citing DOT, Appendix C).  Therefore, there is a conflict between the limitations set forth by the

19   ALJ, upon which the VE based his testimony, and the job description provided in the DOT.

20           Notably, although the ALJ states the VE's testimony is consistent with the DOT (AR at 25),

21   the ALJ did not inquire about consistency at the hearing.  An ALJ may not rely on a VE's testimony

22   regarding the requirements of a particular job without first inquiring whether the testimony conflicts

23   with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9 th Cir. 2007); *see also* SSR 00-4p, 2000

24   SSR LEXIS 8, at *1.  If there is a such a conflict, the ALJ must resolve it by determining whether the

25   VE's explanation for the conflict is reasonable and justifies reliance on the expert's testimony rather

26

27           [4]  Social Security Rulings are issued by the Commissioner to clarify regulations and policies.  Though they do not
     have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with
28   the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

13

1  than on the DOT.  *Id.* at 1154; *Bray v Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1233 (9th Cir.

2  2009) ("When there is a conflict between the VE evidence the DOT, it is a duty of the ALJ to inquire

3  on the record as to the reason for the inconsistency before relying on the VE's evidence.").  Because

4  the ALJ failed to ask the vocational expert whether his testimony conflicted with the DOT and

5  whether there was a reasonable explanation for the conflict, the testimony cannot be substantial

6  evidence in support of the finding that Plaintiff could perform the work in the national economy.

7  **C.      Remand is appropriate in this matter.**

8          The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or

9  to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*

10  *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

11  administrative agency determination, the proper course is to remand to the agency for additional

12  investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v.*

13  *Ventura*, 537 U.S. 12, 16 (2002).  Generally, an award of benefits is directed when:

14          (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
         (2) there are no outstanding issues that must be resolved before a determination of
15          disability can be made, and (3) it is clear from the record that the ALJ would be required
         to find the claimant disabled were such evidence credited.

16

17  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed

18  where no useful purpose would be served by further administrative proceedings, or where the

19  claimant's record has been fully developed.  *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d

20  1396, 1399 (9th Cir. 1988).

21          Applying the *Smolen* factors to this case, there is an issue to be resolved before a

22  determination of disability can be made.  The ALJ failed to inquire whether the was a conflict

23  between the vocational expert's testimony and the job descriptions provided in the DOT, and as a

24  result, it is unclear to what extent the occupational base of light work is eroded by Plaintiff's

25  additional limitations.  Therefore, the matter should be remanded for the ALJ to redetermine

26  Plaintiff's ability to perform other work in the national economy.  *See Massachi*, 486 F3d at 1154,

27  n.19 (remand is appropriate where the court has "an apparent conflict with no basis for the vocational

28  expert's deviation").

14

1

**CONCLUSION**

2       For all these reasons, the Court concludes the ALJ's credibility determination was

3 "sufficiently specific" to allow the conclusion that the ALJ did not arbitrarily discredit Plaintiff's

4 testimony. *See Moisa*, 367 F.3d at 885.  Where the evidence supporting rejection of a claimant's

5 credibility is substantial, and where the ALJ did not arbitrarily reject the Plaintiff's testimony, the

6 decision will be upheld even though the finding is not extensive as possible and does not consider all

7 possible factors. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

8       However, the determination that Plaintiff could perform work in the national economy is not

9 supported by substantial evidence.  The ALJ failed to inquire whether there was a conflict between

10 the vocational expert's testimony and the DOT, and because there is a conflict, the failure cannot be

11 considered harmless. *Massachi*, 486 F.3d at 1154, n. 19.  Because the ALJ failed to apply proper

12 standards and the findings are not supported by substantial evidence, the determination that Plaintiff

13 is not disabled cannot upheld by the Court. *See Sanchez*, 812 F.2d at 510.  Accordingly, **IT IS**

14 **HEREBY ORDERED**:

15       1.     This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for

16             further proceedings consistent with this decision; and

17       2.     The Clerk of Court is directed to enter judgment in favor of Plaintiff Jose Luis

18             Belmontes and against Defendant Michael J. Astrue, Commissioner of Social

19             Security.

20 IT IS SO ORDERED.

21 Dated:    **March 19, 2012**                  **/s/ Jennifer L. Thurston**
                                                UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28